UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DUSTIN MARSHALL,

        Plaintiff,

v.

SUZANNE GROFF et al.,

        Defendants.
_____/

Case No. 1:23-cv-1118

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues LCF Nurse Practitioner Suzanne Groff, LCF medical care provider Jane Doe (referenced herein as Unknown Party #1), and medical care provider John Doe (referenced herein as Unknown Party #2).

Plaintiff alleges that he was diagnosed with thymoma cancer during 2020.[1] Plaintiff was prescribed chemotherapy and, in connection with the chemotherapy, was prescribed an extended-release 30 milligram morphine tablet every 8 hours, two 5 milligram Norco tablets every 6 hours as needed, and 100 milligrams of Lyrica every 8 hours. Plaintiff reports that he is also required to take three Granix shots after every cycle of chemotherapy to promote production of white blood cells.

During February of 2023, Plaintiff was taken off of his extended-release morphine tablet and placed on an immediate-release morphine medication to be provided as needed. On February 15, 2023, Plaintiff sent a medical kite to the health care department asking why his medication had been changed. The next day, Registered Nurse Mary Shultz (not a defendant), responded that "per MP note dated 2/15/2023: Patient has been caught 'cheeking' and selling his long acting morphine. Discussed concerns with choices coordinator. Morphine changed to IR as needed." (Compl., ECF No. 1, PageID.4.)

Plaintiff states that he has never "cheeked" or "sold" his medication, he has never been caught "cheeking" or "selling" his medication, and he has never received a misconduct report for "cheeking" or "selling" his medication. (*Id*.) Plaintiff notes, however, that from the date he arrived at LCF the nursing staff had commented that Plaintiff was on "too much medication" and they were going to see to it that his "medication is reduced." (*Id*., PageID.4–5.)

---

[1] Plaintiff's factual allegations appear at pages 4 through 9 of Plaintiff's complaint. (Compl., ECF No. 1, PageID.4–9.)

2

On February 19, 2023, Plaintiff filed a grievance regarding the change in medication. On February 22, 2023, he requested his medical records for the period of February 6, 2023, forward including communications between providers or between providers and "Choices." (*Id.*, PageID.5.)

On March 7, 2023, Registered Nurse McIntosh (not a defendant) responded at the first step of the grievance process. The response essentially repeated the information from Nurse Shultz's kite response. (*Id.*, PageID.5.) The response noted that the immediate-release morphine could be crushed and, therefore, could be dispensed in a way that would frustrate "cheeking" and "selling." (*Id.*)

On March 14, 2023, Plaintiff received his medical records. They included a clinical encounter administrative note that Plaintiff has attached to the complaint as Appendix C. The note is authored by Defendant Groff. Nurse Groff indicates that Plaintiff had been caught cheeking and selling his extended release morphine. (ECF No. 1-3, PageID.20.) She discussed that concern with the "choices coordinator." (*Id.*) Plaintiff's medication was changed from extended-release to immediate-release to be dispensed crushed and dissolved. (*Id.*)

On March 27, 2023, Plaintiff filed a second grievance against Defendant Groff and the "Choices committee." (Compl., ECF No. 1, PageID.6–7.) In the grievance, Plaintiff reported that the immediate release morphine was not sufficient to control his pain because it wore off too quickly. He indicated the new drug caused his body to overheat, his heart rate to increase, hives, and, ultimately, unbearable pain. (*Id.*, PageID.7.)

Plaintiff's first grievance proceeded to the second step. On April 6, 2023, Plaintiff received a response from Registered Nurse Michelle Gilbert (not a defendant). (*Id.*, PageID.6.) Nurse Gilbert also noted the "cheeking" and "selling" report, but noted further that Plaintiff had been

3

seen by the medical provider on March 28, 2023, and that Plaintiff was placed back on the extended-release morphine. (*Id.*)[2]

On April 10, Registered Nurse J. Peter (not a defendant) responded to Plaintiff's second grievance at the first step as follows:

> Upon investigation and review of the Electronic Medical Record (EMR), it was brought to the attention of healthcare staff that the Grievant was cheeking his Morphine ER and selling it on the yard. The Grievant is the only inmate at this facility that takes this medication. The Medical Provider (MP) consulted with the CHOICES manager and the decision was made to discontinue the Morphine ER and change it to Morphine IR. After the investigation was completed, the evidence was not substantiated to prove the pills that were found were the Grievant[']s. The MP consulted with the CHOICES manager regarding this finding and the Grievant's repeated claims of increased pain. The Morphine ER was reordered on 3/31/2023.

(*Id.*, PageID.7–8.) Plaintiff continued to press his second grievance through the two remaining steps claiming that it was deliberate indifference to change his medication based on an unsubstantiated accusation. (*Id.*, PageID.8–9.) His appeals were denied at step two and step three.

Plaintiff's allegations specifically mention the role that Defendant Groff played with regard to Plaintiff's medical care during February and March of 2023. Plaintiff never states what Unknown Defendant #1 or Unknown Defendant #2 did, or did not do, during the relevant time period. Nonetheless, Plaintiff claims all three defendants were deliberately indifferent to Plaintiff's serious medical needs when they "falsified" Plaintiff's medical records (Count I) and altered his cancer treatment (Count II). (*Id.*, PageID.10.) Plaintiff claims that defendants also violated his right to due process of law (Count III) by falsifying his medical records, altering his cancer

---

[2] The step two response to Plaintiff's first grievance was not timely. (Compl., ECF No. 1, PageID.6–7.) When the time to respond had expired, Plaintiff submitted a third step appeal. That appeal was rejected because Plaintiff failed to include the step two response. Plaintiff notes that his step three appeal was appropriate after he did not receive a timely step two response and that the rejection of his step three appeal is inconsistent with the MDOC's grievance policy.

4

treatment, and failing to conduct a full and proper investigation into the allegations prior to altering his treatment. (*Id*., PageID.11.)

Plaintiff seeks a declaration that defendants violated his constitutional rights and compensatory and punitive damages in an unstated amount.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

5

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that defendants violated his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to due process of law.

### A.     Deliberate Indifference

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

6

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

7

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Falsification of Medical Records

Plaintiff suggests that defendants "falsified" his medical record. Although Plaintiff references "defendants," the only allegations in the complaint that attribute false statements to a defendant relate to Defendant Groff.

"[A]lleging the falsification of medical records is relevant to a claim for deliberate indifference, [but] there is no cognizable Eight[h] Amendment claim solely for falsification of medical records." *Allen v. Beaumont*, No. 1:22-cv-258, 2022 WL 1590671, at *6 (W.D. Mich. May 19, 2022) (quoting *Reed v. Nelson*, No. 2:20-CV-512-DMC-P, 2021 WL 2417655, at *4 (E.D. Cal. Jun. 14, 2021)). A "falsified" medical record might support an inference of deliberate

indifference if the record failed to disclose or inaccurately discloses symptoms or a diagnosis for the purpose of covering up a failure or refusal to treat a condition. *See, e.g.*, *Hardy v. Gauderer*, No. 1:16-cv-1130, 2018 WL 1477150, at *2 (W.D. Mich. Mar. 5, 2018), *report and recommendation adopted*, 2018 WL 1471536 (Mar. 26, 2018). Alternatively, a "falsified" medical record might support an inference of deliberate indifference if the record discloses treatment that never occurred. *See, e.g.*, *Sobczak v. Spitters*, No. 1:09-cv-57, 2011 WL 811268, at *2 (W.D. Mich. Feb. 3, 2011), *report and recommendation adopted*, 2011 WL 776121 (Mar. 1, 2011).

But neither of those circumstances is present here. Instead, Plaintiff claims that his medical record was false because he never "cheeked" or sold his morphine. Plaintiff attaches Defendant Groff's report regarding the "cheeking" and selling of the morphine. Plaintiff does not suggest that Groff made the accusation or that Groff discovered the morphine in the possession of the other prisoner. Plaintiff's allegations support the inference that she is merely repeating the information provided to her.

More importantly, the purportedly "false" information in the medical record did not cover up a failure to treat nor did it hide a need to treat; it simply resulted in a change of the treatment from one form of morphine to another. There is nothing in Plaintiff's complaint to suggest that Defendant Groff had any reason to know that changing from extended-release morphine at specified intervals to immediate-release morphine as needed would result in any difference in addressing Plaintiff's pain. Indeed, given the information that Plaintiff does not dispute Defendant Groff was given, the immediate-release morphine was the only way to ensure that Plaintiff was getting the pain relief the morphine prescription was intended to provide.

Plaintiff's factual allegations relating to Defendant Groff simply do not support an inference that she was deliberately indifferent to Plaintiff's serious medical need. Accordingly,

Plaintiff has failed to state a deliberate indifference claim against Defendant Groff for the "falsification" of medical records. Plaintiff has also failed to state a claim against Unknown Party #1 or Unknown Party #2 as related to the "falsification" of his medical records because he makes no factual allegations that connect these defendants to false information in his medical record. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

### 2. Changing Plaintiff's Morphine

Plaintiff contends that the change from extended-release morphine to immediate-release morphine caused him to "live in unbearable pain and discomfort" and caused hives, his body to overheat, and his heart rate to increase. (Compl., ECF No. 1, PageID.7.) As an initial matter, "the prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (citations omitted); *see, e.g.*, *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects").

Furthermore, based on the complaint, it is not clear that Plaintiff ever communicated that consequence to any of the defendants. Indeed, based on Plaintiff's complaint, it appears he first

described that consequence to healthcare providers generally in his March 27, 2023, grievance. (Compl., ECF No. 1, PageID.6–7.) Plaintiff was seen by a medical provider the next day and the extended-release morphine was reordered. (*Id*., PageID.8–9.) Put differently, there are no facts alleged in Plaintiff's complaint that support the inference that Defendants Groff, Unknown Party #1, or Unknown Party #2, were aware that Plaintiff was subject to a substantial risk of serious harm and then disregarded that risk. To the contrary, it appears that promptly after Plaintiff made medical providers—not necessarily the defendants, but medical providers—aware of such a risk, his medication was changed. Therefore, Plaintiff fails to state a claim against any of the defendants for deliberate indifference to Plaintiff's serious medical needs by virtue of the switch from extended-release to immediate-release morphine.

**B.      Due Process**

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff presents three conclusory due process claims:

The conduct of Defendants Groff, and Jane and John Doe, individually and jointly, in falsifying Plaintiff's medical records on an unsubstantiated allegation, constitutes a denial of due process under the Fourteenth Amendment.

The conduct of Defendants Groff, and Jane and John Doe, individually and jointly, in altering Plaintiff's prescribed cancer treatment on an unsubstantiated allegation, constitutes a denial of due process under the Fourteenth Amendment.

The conduct of Defendants Groff, and Jane and John Doe, individually and jointly, in failing to conduct a full and proper investigation into the allegations prior to

11

      altering his prescribed cancer treatment, constitutes a denial of due process under the Fourteenth Amendment.

(Compl., ECF No. 1, PageID.11.) It is not entirely clear what "interest" Plaintiff claims is protected by due process; perhaps it is an interest in accurate medical records, perhaps it is an interest in particular medical treatment, or perhaps it is an interest in investigation into allegations of "cheeking" and selling prescription medications.

      Plaintiff does not have a constitutional right to accurate medical records, except, perhaps, to the extent accurate medical records implicate Plaintiff's right to appropriate medical care. *See, e.g.*, *Parks v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, No. CIV-20-205-D, 2022 WL 2872258, at *3 (W.D. Okla. July 21, 2022) ("The issue presented regarding Claim 5 is a discrete right to accurate medical records. The Court is not persuaded that such a constitutional right exists."); *Bernazard v. Bartsich*, No. 15-CV-945(JG), 2015 WL 6455159, at *2 (E.D.N.Y. Oct. 26, 2015) ("[T]here is no constitutional right to accurate medical records to which plaintiff points or that I can discern."); *Swearington v. Cal. Dep't of Corr. and Rehab.*, No. 1:12-cv-00958-MJS(PC), 2014 WL 1671749, at *5 (E.D. Cal. Apr. 28, 2014) ("He does not have an independent (due process) right to an accurate prison [medical] record . . . ."); *Richardson-El v. Illinois Dep't of Corr.*, No. 13-cv-00952-MJR, 2013 WL 5648264, at *3 (S.D. Ill. Oct. 16, 2013) ("Plaintiff has no constitutional right to accurate medical records, and inaccurate medical records do not impede his right to be heard."); *Johnson v. Cockrell*, No. 2:05-CV-0315, 2007 WL 894417, at *3 (N.D. Tex. Mar. 23, 2007) (Plaintiff does not state any basis for any contention that he has a constitutionally protected right to accurate medical records . . . .").

      To the extent Plaintiff's claim is premised on his right to medical care, it is protected by the Eighth Amendment—and, therefore, addressed above—and not the Fourteenth Amendment. Procedural due process protection is not the type of protection afforded to the right to medical care.

12

The Supreme Court explained the nature of that protection in *DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989), as follows:

> . . . . [I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), requires the State to provide adequate medical care to incarcerated prisoners. 429 U.S., at 103–104, 97 S.Ct., at 290–291. We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him. *Ibid.*, quoting *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926).
>
> In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others. *Id.*, at 314–325, 102 S.Ct., at 2457–2463; *see id.*, at 315, 324, 102 S.Ct., at 2457, 2462 (dicta indicating that the State is also obligated to provide such individuals with "adequate food, shelter, clothing, and medical care"). As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Id.*, at 315–316, 102 S.Ct., at 2457–2458; *see also Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (holding that the Due Process Clause requires the responsible government or governmental agency to provide medical care to suspects in police custody who have been injured while being apprehended by the police).
>
> But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. *See Youngberg v. Romeo, supra*, 457 U.S., at 317, 102 S.Ct., at 2458 ("When a person is institutionalized—and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist"). The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. *See Estelle v. Gamble, supra*, 429 U.S., at 103–104, 97 S.Ct., at 290–291; *Youngberg v. Romeo, supra*, 457 U.S., at 315–316, 102 S.Ct., at 2457–2458. The affirmative duty to protect arises not from

13

> the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble, supra*, 429 U.S., at 103, 97 S.Ct., at 290 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 198–200 (footnotes omitted). The Sixth Circuit Court of Appeals has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

The fact that the right to medical care is a substantive due process right, essentially means that the state cannot avoid the obligation to provide medical care by affording a person the essential guarantees of procedural due process—notice of the intended deprivation and an opportunity to be heard. Thus, Plaintiff cannot prevail on a procedural due process claim for failure to provide medical care or a claim to provide safe conditions of confinement. Those claims are properly dismissed.

Moreover, convicted prisoners like Plaintiff do not need to rely on a substantive due process right with regard to medical care. They are entitled to medical care under the Eighth Amendment because, as noted above, a failure to provide such care would be inconsistent with contemporary standards of decency and, thus, would render their punishment cruel and unusual. Critically, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard

for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (6th Cir. 1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (explaining that, "plaintiff's section 1983 claim in a [deliberate indifference] case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights" (citations omitted)); *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 344 (6th Cir. 2014 ) ("O'Brien's allegations concerned the denial of medical care, thus, '[t]he Eighth Amendment is the primary source of substantive protection' available to him . . . not the more generalized notion of 'substantive due process[.]'"). Because the Eighth Amendment provides an explicit textual source of protection against the alleged deliberate indifference to risks of harm, Plaintiff's substantive due process claim—if any such claim was intended—is properly dismissed.[3]

For all of these reasons, Plaintiff's conclusory due process claims centered on his medical record and the change in his medication fail to state a claim.

Plaintiff's claim regarding the investigation of the "cheeking" accusation also fails. Whether the imposition of consequences based on an accusation of wrongdoing implicates the

---

[3] Although the relevant protection afforded convicted prisoners arises from the Eighth Amendment, that amendment cannot protect every person held in custody, because the Eighth Amendment is a limit on "punishment." Not every person held in custody is properly subject to punishment. *DeShaney*, 489 U.S. at 199 n.6. Indeed, until a person has been convicted, the person cannot be punished. *Id*. The right to medical care and reasonably safe conditions of confinement for such a person—a pretrial detainee, for example—must arise from a source other than the Eighth Amendment; the Supreme Court has settled on the Due Process Clause of the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

protection of due process depends on the nature of the consequences. A prisoner will not have a protected liberty interest unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). There is nothing about the switch from extended-release morphine to immediate-release morphine that impacts the duration of Plaintiff's sentence. Moreover, other than the impact of the switch on Plaintiff's serious medical needs—an interest that, as explained above, is exclusively protected by the Eighth Amendment—there is no resulting atypical and significant hardship. Accordingly, Plaintiff has failed to state a due process claim related to the investigation of the "cheeking" accusation.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   November 13, 2023              /s/ Robert J. Jonker
                                                                                                        Robert J. Jonker
                                                                                                        United States District Judge